1

2

3

4

5

6

7

8

9

10

11

12

13

14

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JUDITH ANN MAROVICH,

      Plaintiff,

    vs.

CAROLYN W. COLVIN,[1]

      Defendant.

Case No.: 4:12-cv-06366-KAW

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT

      Judith Ann Marovich ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant").  Pending before the court are the parties' cross-motions for summary judgment.  Having considered the papers filed by the parties, the court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

## I.    BACKGROUND

### A.    Plaintiff's application for Social Security benefits

      On December 1, 2008, Plaintiff filed a Title II application for Social Security disability insurance benefits.  (Administrative Record ("AR") at 175.)  In her application, Plaintiff alleged that she became disabled on July 2, 2008.  *(Id.)*  Plaintiff alleged disability based on the following conditions:  fibromyalgia, sleep apnea, depression, high blood pressure, irritable bowel syndrome,

---

[1] Acting Commissioner Carolyn W. Colvin is automatically substituted for former Commissioner Michael J. Astrue as Defendant.  *See* Fed. R. Civ. P. 25(d).

GERD, and arthritis. (*Id.* at 116.) The Social Security Administration ("SSA") denied Plaintiff's Title II application initially and upon reconsideration.[2] (*Id.* at 116, 122.)

**B.      The administrative hearings**

On July 15, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 128.) ALJ Richard P. Laverdure held the requested hearing on July 13, 2010. (*Id.* at 91.) He also held a supplemental hearing on January 12, 2011. (*Id.* at 54.) Plaintiff, who was represented by an attorney, testified at the initial hearing.[3] (*Id.* at 91.)

Plaintiff testified that she stopped working in July 2008 due to her fibromyalgia and a work-related injury to her right hand and arm. (*Id.* at 93, 94.) According to Plaintiff, she sustained the work-related injury as a result of repetitive tasks at work. (*Id.* at 98.) Plaintiff also testified that she suffers from gastro reflux disease, abnormal liver studies, chronic pain, sleep problems, depression, radial tunnel syndrome, carpal tunnel, epicondylitis, and "some issues that go through [her] shoulder up to [her] neck which [are] now going into [her] left arm as well." (*Id.* at 94, 95.) With respect to the condition affecting her right hand and arm, Plaintiff stated that she had undergone a second surgery approximately two weeks before the hearing. (*Id.* at 94.)

Plaintiff also testified that she was first diagnosed with fibromyalgia in 1991. (*Id.* at 96.) She stated that Dr. Morgan confirmed this diagnosis when he became her primary care physician in 1998, after her first doctor retired. (*Id.* at 95, 101.) When the ALJ noted that the record did not contain "a trigger point analysis," Plaintiff responded, stating "[n]o [Dr. Morgan] checked me for all that." (*Id.* at 96.) According to Plaintiff, her fibromyalgia makes it "hard to do what [she] used to do." (*Id.* at 95.) She indicated that it is difficult for her to complete household chores but does them anyway. (*Id.*) She also indicated that she is able to sit and stand for no more than 15 to 20 minutes at a time before she gets "this overwhelming crash feeling" and has to walk around or lay

---

[2] The case analysis prepared by the SSA in connection with the reconsideration of Plaintiff's application contains the following note: "no reports of trigger points on exam." AR at 553.

[3] During the initial hearing, Gerald Belchick, a vocational expert, also testified. *Id.* at 91, 108. He testified only as to the nature of Plaintiff's past relevant work. *Id.* at 108, 109. The ALJ ultimately relied on the past relevant work characterization given by the vocational expert who testified at the supplemental hearing. *Id.* at 20.

United States District Court
Northern District of California

1   down.  (*Id.* at 95, 96.)  Plaintiff testified that aside from her right arm, her fibromyalgia causes her

2   the most trouble "in the sense that the pain just never goes away."  (*Id.* at 101.)  She described the

3   pain she experiences in her legs, chest, ribcage, and feet, as "[a] burning, achy feeling, [which]

4   sometimes feels like flu like symptoms."  (*Id.* at 96-97.)  She also reported that she sometimes

5   "get[s] the chills or sweats."  (*Id.* at 97.)

6       Plaintiff stated that she left her job as an intake coordinator because she was "in too much

7   discomfort."[4]  (*Id.* at 97, 98.)  When asked about the prognosis of her chronic pain, she responded

8   that "the doctor had said that he does not[,] with the death of my son[,] . . . think that it's going to

9   get any better."  (*Id.* at 98, 103.)  Plaintiff testified that she takes Celexa, Prilosec,

10  Hydrochlorothiazide, Norvasc, Simivastatin, Norco, and various vitamins for her conditions.  (*Id.* at

11  99.)  She indicated that these medications make her "go to the bathroom a lot" and make her

12  "groggy."  (*Id.* at 100.)  She also stated that she does not "drive when [she's] taking [her]

13  medication[] . . . but if she ha[s] to get [from] point A to point B, [she] will not take it."  (*Id.*)

14  Plaintiff attributes her psychiatric issues to her work-related injury, the recent death of her son, and

15  her fibromyalgia.  (*Id.* at 100-101.)

16      Plaintiff testified that she visited Dr. Piasecki in connection with her 2007 worker's

17  compensation claim.[5]  (*Id.* at 101.)  Plaintiff indicated that Dr. Piasecki is a panel doctor.  (*Id.* at

18  102.)  She identified Dr. Schwartz as another one of her treating physicians.  She also stated that

19  she had seen Dr. Marty "right before [she] quit [her] job until last year." [6]  (*Id.* at 103.)  Plaintiff

20  further testified that she is not currently seeing any physician for her mental health issues.  (*Id.* at

21  103.)

22

23  _____

    [4] Plaintiff testified that after leaving her job in July 2008, she received state disability insurance

24  benefits for one year.  AR at 94.

25  [5] Plaintiff indicated that she filed her workers' compensation claim in August 2007, which had not

26  been resolved as of the hearing of the initial hearing on her application for Social Security benefits.
    *Id.*

27  [6] The record shows that Dr. Marty was treating Plaintiff for her psychiatric problems between May

28  2008 and October 2009.  *Id.* at 487.

United States District Court
Northern District of California

After Plaintiff's testimony, the ALJ adjourned the hearing.  (*Id.* at 105.)  Because Plaintiff's attorney had only recently agreed to represent Plaintiff and had just received notice of the hearing the Friday before, the ALJ granted Plaintiff a continuance to submit additional evidence.[7]  (*Id.* at 104.)  The ALJ also noted that the SSA had problems obtaining documentary evidence of a proper clinical work-up for Plaintiff's fibromyalgia and identified the lack of a consistent assessment by Dr. Morgan was "one area [he saw] as being problematic."  (*Id.* at 105.)  The ALJ indicated that "it would be useful . . . [if Plaintiff] could get something from Dr. Morgan that documents how he came to his conclusion that [Plaintiff suffers] either from chronic pain syndrome and/or fibromyalgia because he uses all of those terms together occasionally and sometimes his records don't even refer to chronic pain or fibromyalgia."  *(Id.)*  With respect to Dr. Marty's alleged failure to release Plaintiff's psychiatric treatment records, the ALJ noted that "if necessary we can issue a subpoena . . . ."  (*Id.* at 106.)  The ALJ gave Plaintiff until August 12, 2010 to supplement the record.  (*Id.* at 113.)  The ALJ also instructed Plaintiff's counsel to notify him "if for some reason [he] need[ed] more time to obtain records."  *(Id.)*

The ALJ held a supplemental hearing on January 12, 2011.  (*Id.* at 52.)  Malcolm Brodzinsky, a vocational expert, testified at the supplemental hearing.  (*Id.* at 54.)  He characterized Plaintiff's past relevant work as sedentary work.  (*Id.* at 64, 65.)  During the hearing, the ALJ again noted a number of the deficiencies in the record, particularly with respect to Dr. Morgan's records. (*Id.* at 70.)  The ALJ highlighted that in July 2009, Dr. Morgan indicated that he could not complete a questionnaire for Plaintiff[8] but then provided a medical source statement dated July 2010, with nothing to explain his change in opinion.  *(Id.)*  The ALJ advised Plaintiff that if he was to credit Dr. Morgan's opinion, he "need[ed] to know [whether] it was based on his having seen [Plaintiff] during the ensuing time period [or] during th[e] intervening time period, and that the treatment and

---

[7] Attorney Brian Thornton represented Plaintiff at both the initial and supplemental hearings.  AR at 152, 153.  Prior to that, attorney Fred. J. Fleming represented Plaintiff from March 6, 2009 to May 21, 2010.  *Id.* at 130, 134.

[8] The record shows Dr. Morgan response was as follows:  "I am unable to complete this.  She is followed by other [doctors] who would best be asked, and may or may not be able to complete."  *Id.* at 465.

his assessment . . . reasonably support[] his opinion." *(Id.)* When Plaintiff stated that Dr. Morgan

"has been caring for [her] for all these years" and went on to ask "[w]hat would make the difference

of him having to send in notes," the ALJ explained:

> [Y]our attorney understands what evidence is and . . . why we need evidence. And we
> require that basically of all physicians, I mean, if they're going to fill out a statement saying
> this claimant can't work, we want to know what to base that on, not just saying I've . . .
> talked to this claimant or I've examined this claimant . . . .

*(Id.* at 87.) At the conclusion of the supplemental hearing, the ALJ gave Plaintiff "until the end of

month" to supplement the record with Dr. Morgan's treatment notes. *(Id.* at 87, 88.) On February

14, 2011, Plaintiff submitted reports by Drs. Larsen and Morgenthaler. *(Id.* at 294.) Plaintiff did

not include any additional materials from Dr. Morgan. *(See id.)*

## C.      The ALJ's decision

In an April 5, 2011 decision, the ALJ determined that Plaintiff was not disabled as of July 2,

2008, the alleged onset date, through the date of his decision. *(Id.* at 20.) The ALJ made the

following findings:  (1) Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2012; (2) there was no evidence that Plaintiff had engaged in substantial

gainful activity since July 2, 2008, the alleged onset date; (3) Plaintiff suffers the following severe

impairments:  "right epicondylitis, status post surgeries; right shoulder tendonitis, irritable bowel

syndrome, rule out fibromyalgia, and a pain syndrome;"[9] (4) Plaintiff does not have an impairment

or combination of impairments that meets or medically equals a listed impairment; (5) Plaintiff has

the residual functional capacity to perform light work, except that Plaintiff can perform no more

than occasional reaching (including overhead reaching) and gross handling with the dominant right

upper extremity and must avoid climbing ladders, ropes, and scaffolds; (6) Plaintiff cannot perform

her past relevant work; (7) Plaintiff is a younger individual, based on her age as of the alleged onset

date; (8) Plaintiff has at least a high school education and is able to communicate in English; (9)

transferability of skills is not material to the determination of disability, as Plaintiff is not disabled

---

[9] The ALJ also determined that Plaintiff's sleep apnea, vitamin D deficiency, gastroesophageal reflux
disease, high blood pressure, and depression were not severe impairments.  AR at 23.  He noted that
the record did not contain any objective findings suggesting that these conditions imposed significant
limitations on Plaintiff's ability to perform basic work activities.  *Id.*

United States District Court
Northern District of California

1 irrespective of whether she has transferable job skills; and (10) Plaintiff is capable performing

2 various jobs that exist in significant numbers in the national economy.  (AR at 22, 24, 25, 30, 32.)

3 Plaintiff requested that the Appeals Council review the ALJ's decision.  (*Id.* at 15.)  She also

4 submitted additional evidence to the Appeals Council.  (*Id.* at 5.)  This additional information

5 included a March 14, 2012 representative brief from Plaintiff's attorney;[10] medical records from

6 Peninsula Hospital from May 12, 2009 through June 29, 2010; and a July 11, 2011 physical residual

7 functional capacity questionnaire from Dr. Morgan.  *(Id.)*  The Appeals Council denied review on

8 October 18, 2012, and the ALJ's decision became the final decision of the Commissioner.  (*Id.* at 1.)

9 This appeal followed.  (Compl., Dkt. No. 1.)

## II.    LEGAL STANDARD

11 A court may reverse the Commissioner's denial of disability benefits only when the decision

12 is 1) based on legal error or 2) not supported by substantial evidence in the record as a whole.  42

13 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is

14 "more than a mere scintilla but less than a preponderance." *Id.* at 1098.  It is "such relevant

15 evidence as a reasonable mind might accept as adequate to support a conclusion."  *Smolen v.*

16 *Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings

17 are supported by substantial evidence, the court must consider the evidence as a whole, weighing

18 both the evidence that supports and the evidence that undermines the Commissioner's decision.  *Id.*

19 "Where evidence is susceptible to more than one rational interpretation, the [Commissioner's]

20 decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

21 The court, however, may not affirm the Commissioner's decision "simply by isolating a specific

22 quantum of supporting evidence."  *Id.* (internal quotations and citations omitted).  The court's

23 review is limited to the reasons the ALJ provided in the disability determination.  *Connett v.*

24 *Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

25 2007) (The court "may not affirm the ALJ on a ground upon which the he did not rely.").

26

27

_____

28 [10] Attorney Denise Bourgeois Haley filed the representative brief on Plaintiff's behalf.  AR at 296, 297, 298.  Ms. Haley represented Plaintiff as of May 12, 2011.  *Id.* at 12, 13.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### III.    ANALYSIS

Plaintiff offers two principal arguments in support of her appeal.  (Pl.'s Mot. Summ. J. at 12, 17.)  First, she argues that the ALJ erred when he did not afford due weight to the opinions of various physicians.  (*Id.* at 12.)  Second, Plaintiff argues that the ALJ erred when he discredited Plaintiff's testimony regarding the severity of her symptoms.  (*Id.* at 17.)  On these grounds, Plaintiff seeks an order from this court reversing the Commissioner's decision and directing payment of benefits.  (*Id.* at 2.)  In the alternative, Plaintiff asks that the court remand this case for further administrative proceedings.  (*Id.)*  As set forth below, the ALJ's decision is supported by substantial evidence[11] and is free of legal error.  This court thus affirms that decision.

**A.    The ALJ did not err in rejecting certain physicians' opinions.**

1.    <u>The ALJ gave legally sufficient reasons for rejecting the opinions of Drs. Morgan and Zatarain-Rios.</u>

A treating physician's opinion is entitled to more weight than the opinion of a non-treating physician.  20 C.F.R. § 404.1527(c)(1)-(2).  More specifically, a treating physician's opinion is entitled to controlling weight if it is well-supported and consistent with the other substantial evidence in the record.  *Id.* § 404.1527(d)(2).  When a treating doctor's opinion is not contradicted, an ALJ may reject it only for "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (internal quotations and citation omitted).  But when a treating physician's opinion is contradicted by the opinion of another doctor, an ALJ may reject it based on "specific and legitimate reasons supported by substantial evidence in the record . . . ."  *Id.* (internal quotations and citation omitted).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Moreover, an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief,

---

[11] In reaching this conclusion, the court has considered the additional evidence submitted to the Appeals Council but not presented to the ALJ.  *See Brewes v. Comm'r of Soc. Sec. Admin*, 682 F.3d 1157, 1163-64 (9th Cir. 2012) (holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") (citation omitted).

United States District Court
Northern District of California

1   conclusory, and inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947,

2   957 (9th Cir. 2002).

3       "To the extent that it [wa]s consistent with [his] decision," the ALJ placed "great weight

4   [on] the opinion of Dr. Anderson because he is a specialist in rheumatology, and because he

5   rendered his opinion after an exhaustive review of [Plaintiff's] entire medical record."  (AR at 29.)

6   Dr. Anderson, one of the agreed medical examiners in Plaintiff's workers' compensation case,

7   opined that Plaintiff could perform work that does not involve extensive use of her right arm.  *(Id.)*

8       The ALJ also placed "some weight" on the opinion of Dr. Piasecki.  *(Id.)*  Dr. Piasecki is an

9   orthopedic surgeon.  *(Id.)*  He was another one of the agreed medical examiners in Plaintiff's

10  workers' compensation case.  *(Id.)*  Dr. Piasecki examined Plaintiff on three separate occasions.

11  *(Id.)*  He opined that Plaintiff was able to work, but should avoid activities that require heavy lifting

12  in excess of 25 pounds, forceful grasping with the right hand and repetitive data entry with the right

13  hand.  *(Id.)*

14      The ALJ, however, placed "little weight" on the opinions of Drs. Morgan and Zatarain-Rios,

15  two of Plaintiff's treating physicians.  (AR at 29.)  Dr. Zatarain-Rios opined that Plaintiff was

16  limited to occasionally lifting less than ten pounds, could stand or walk for only two hours in an

17  eight-hour workday, and sit for only four hours in an eight-hour workday.  *(Id.)*  Dr. Morgan, who

18  is Plaintiff's primary treating physician, opined that Plaintiff could sit for only 15 minutes at a time,

19  stand for only ten minutes at a time, sit for a total of two hours in an eight-hour workday, and stand

20  or walk for a total of two hours in an eight-hour workday.  *(Id.)*  Dr. Morgan also opined that

21  Plaintiff would never be able to lift 10 pounds, could occasionally lift less than 10 pounds, must

22  take unscheduled breaks on an hourly basis, was incapable of low stress work, and would be absent

23  from work for more than four days per month.  *(Id.)*  The ALJ rejected these opinions because they

24  were "unsupported by the objective medical evidence in this case (especially with respect to sitting

25  and standing/walking limits)" and were "contradicted by the opinions of Dr. Anderson, who is

26  board certified in rheumatology, and by Dr. Piasecki, who is board certified in orthopedic surgery."

27  (AR at 30.)

28

United States District Court
Northern District of California

Plaintiff contends that the ALJ improperly rejected the opinions of Drs. Morgan and Zatarain-Rios for a number of reasons.  (Pl.'s Mot. Summ. J. at 12.)  Plaintiff argues that the ALJ did not consider the entire record, including the unique circumstances involving fibromyalgia.  *(Id.)* Plaintiff's contention that the ALJ did not consider the entire record fails.  Here, the ALJ not only identified and alerted Plaintiff to certain deficiencies in the record, but he also gave Plaintiff the opportunity to supplement the record with additional information after both the initial and supplemental hearings.  (*See* AR at 87, 88, 106.)  That the ALJ was able to identify the deficiencies in the record suggests that he reviewed the entire record, which he described as "rather voluminous."  (*See id.* at 104.)  Plaintiff's argument that the ALJ failed to acknowledge the unique nature of fibromyalgia is also unavailing.  During the initial hearing, the ALJ noted that the agency had problems obtaining documentary evidence of a proper clinical work-up for Plaintiff's fibromyalgia and noted that the lack of a consistent assessment by Dr. Morgan was "one area [he saw] as being problematic."  (*Id.* at 105.)  In fact, the ALJ even highlighted the absence of a trigger point analysis during that hearing.  (*Id.* at 96.)

The ALJ addressed this issue again at the supplemental hearing, when the ALJ highlighted that in July 2009 Dr. Morgan indicated that he could not complete a questionnaire for Plaintiff but then provided a medical source statement dated July 2010, without explaining his change in opinion.  *(Id.)*  The ALJ advised Plaintiff that if he was to credit Dr. Morgan's opinion, he "need[ed] to know [whether] it was based on his having seen [Plaintiff] during the ensuing time period [or] during th[e] intervening time period, and that the treatment and his assessment . . . reasonably support[] his opinion."  *(Id.)*  That the ALJ gave Plaintiff numerous opportunities to supplement the record with this evidence does not reflect a failure to consider the entire record or a lack of appreciation for the unique nature of fibromyalgia.

While Plaintiff cites to a number of cases noting the "elusive" nature of the fibromyalgia, none stands for the proposition that requiring a "proper clinical work-up" for the condition, and giving a Plaintiff multiple opportunities to provide such evidence, constitutes reversible error.  *See, e.g., Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (ALJ erred by requiring objective evidence even though three rheumatologists who had treated the claimant diagnosed her with

United States District Court
Northern District of California

fibromyalgia); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007) (ALJ erred by requiring objective evidence beyond the clinical findings necessary to support fibromyalgia diagnosis); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (ALJ erred by relying on "the lack of evidence of objectively discernible symptoms" that were unrelated to a diagnosis of the claimant's fibromyalgia).  Fibromyalgia is diagnosed by a process of exclusion and testing of certain "focal tender points" on the body for the acute tenderness.  *Sarchet*, 78 F.3d at 306 ("[T]he rule of thumb is that the patient must have at least 11 of [18 tender spots at fixed locations on the body] to be diagnosed as having fibromyalgia.").  While Plaintiff testified that Dr. Morgan "checked [her] for all that," she does not point to anything in the record documenting that he completed a medical evaluation resembling a trigger point analysis yielding such results.  *See* AR at 96.[12]

Plaintiff also argues that the opinions of Drs. Morgan and Zatarain-Rios do not contradict the opinions of Drs. Anderson and Piasecki because they all agreed that Plaintiff suffers from fibromyalgia.  (Pl.'s Mot. Summ. J. at 13.)  The court disagrees.  Even if these opinions could be considered consistent in terms of Plaintiff's fibromyalgia diagnosis, the treating physicians' opinions diverge from those of the examining physicians in terms of the extent of Plaintiff's limitations.  For example, Dr. Zatarain-Rios opined that Plaintiff was limited to occasionally lifting less than ten pounds, could stand or walk for only two hours in an eight-hour workday, and sit for only four hours in an eight-hour workday.  (AR at 412, 413.)  Dr. Morgan, who is Plaintiff's primary treating physician, opined that Plaintiff could sit for only 15 minutes at a time, stand for only ten minutes at a time, sit for a total of two hours in an eight-hour workday, and stand or walk for a total of two hours in an eight-hour workday.  (*Id.* at 721.)  Dr. Anderson, however, opined that Plaintiff could

---

[12] According to Plaintiff, Dr. Morgan opined that Plaintiff met the American College of Rheumatology's criteria for fibromyalgia.  Pl.'s Mot. Summ. J. at 5.  The portion of the record Plaintiff cites in support of that assertion is the July 2010 medical source statement by Dr. Morgan, the deficiencies of which the ALJ addressed during the administrative hearings.  *See* AR at 105, 720.  The July 2011 medical source statement by Dr. Morgan, which Plaintiff submitted to the Appeals Council, is similarly flawed.  *See id.* at 984.  While, in that statement, Dr. Morgan listed fibromyalgia as one of Plaintiff's conditions, he again failed to reconcile that opinion with his inability to complete a questionnaire for Plaintiff in 2009.  *See id.* at 465, 984.  Dr. Morgan also failed to refer to any trigger point analysis that would support that purported diagnosis.  *See id.*

United States District Court
Northern District of California

1   perform work that does not involve extensive use of her right arm.  (*Id.* at 749.)  Dr. Piasecki

2   similarly opined that Plaintiff was able to work, but should avoid activities that require heavy lifting

3   in excess of 25 pounds, forceful grasping with the right hand and repetitive data entry with the right

4   hand.  (*Id.* 693.)  Viewed in this way, Plaintiff's argument that these doctors' opinions are not

5   contradictory is unconvincing.

6        In the alternative, Plaintiff argues that even if these doctors' opinions are inconsistent, the

7   opinions of Drs. Morgan and Zatarain-Rios were nonetheless "entitled to deference."  (Pl.'s Mot.

8   Summ. J. at 10.)  Plaintiff asserts that Dr. Morgan was her treating physician for over 9 years, that

9   his "opinions are the sole longitudinal opinions in the record," and that his "findings should be

10  afforded great weight in light of the lengthy treating relationship."  (*Id.* at 14.)  While Plaintiff

11  correctly asserts that the opinions of treating physicians are entitled to deference, and that the length

12  of a doctor-patient relationship affects the weight to be given to a doctor's opinion, an ALJ may

13  nonetheless reject a treating physician's opinion for legally sufficient reasons.  *See Orn*, 495 F.3d at

14  633.  In any event, an "ALJ may disregard [a] treating physician's opinion whether or not that

15  opinion is contradicted."  *Magallanes*, 881 F.2d at 751 (quotations omitted).

16       As discussed above, because the opinions of Drs. Morgan and Zatarain-Rios are

17  contradicted by the opinions of Drs. Anderson and Piasecki, the sufficiency of the ALJ's reasons for

18  rejecting the opinions of Drs. Morgan and Zatarain-Rios is measured against the "specific and

19  legitimate" standard.  *Lester*, 81 F.3d at 830.  This standard requires that the reasons the ALJ has for

20  rejecting the opinion of a treating physician be "specific and legitimate" and supported by

21  substantial evidence.  *Id.*

22       On this point, Plaintiff asserts that the treating physicians imposed additional limitations to

23  those imposed by the examining physicians, who relied on Dr. Morgan's records to form their own

24  opinions.  (Pl.'s Mot. Summ. J. at 13.)  Plaintiff also asserts that because Drs. Anderson and

25  Piasecki relied on those records to form their own opinions, their conclusions are not substantial

26  evidence.  *(Id.)*  Plaintiff, however, ignores that, as the ALJ noted, both Drs. Anderson and Piasecki

27  examined Plaintiff on multiple occasions.  (AR at 27.)  They also reviewed Plaintiff's entire medical

28

1   history, not just Dr. Morgan's treatment records.  *(Id.)*  This defeats Plaintiff's argument that the

2   conclusions of Drs. Anderson and Piasecki do not constitute substantial evidence.

3        Plaintiff argues that while the ALJ relied on the opinions of Drs. Anderson and Piasecki,

4   who examined Plaintiff in the context of her workers' compensation claim, the ALJ did not take into

5   account how their evaluations applied in the context of Plaintiff's Social Security disability claim.

6   (Pl.'s Mot. Summ. J. at 14, 15.)  Specifically, Plaintiff asserts that "[o]nce the ALJ finds that a

7   report contains workers' compensation terms of art, the ALJ must translate those terms out of the

8   forum in which they arose and into the parlance of Social Security disability adjudication."  *(Id.* at

9   15.)  In particular, Plaintiff asserts that the ALJ failed to consider the meaning of the terms

10  "temporary total[] disability" and "permanent and stationary" in the context of this Social Security

11  case.  *(Id.* at 15.)  Plaintiff describes this failure as "plain error."  *(Id.)*  This argument is

12  unpersuasive.

13       In support of this argument, Plaintiff cites *Desrosiers v. Secretary of Health and Human*

14  *Services*, 846 F.2d 573 (9th Cir. 1988).  In *Desrosiers*, the Ninth Circuit explained that "[t]he

15  categories of work under the Social Security disability scheme are measured quite differently" than

16  in the workers' compensation context.  *Id.* at 576.  Under the Social Security disability scheme,

17  categories of work "are differentiated primarily by step increases in lifting capacities."  *Id.*  The

18  court concluded that "the ALJ did not adequately consider this distinction" and erred by treating the

19  workers' compensation preclusion from heavy work as a preclusion from heavy lifting for the

20  purposes of the claimant's disability determination.  *Id.*

21       In this case, the ALJ committed no such error.  While Dr. Anderson concluded that Plaintiff

22  was "permanent and stationary," he also stated that "Plaintiff could work in a sedentary job that did

23  not involve any extensive use of her right arm in light of her chronic pain of her right upper

24  extremity and on a realistic basis, this might involve greeting people at a department store, doing

25  limited telephone work, answering questions at a return center of a store, things of that nature."

26  (AR at 747, 749.)  Dr. Piasecki similarly determined that Plaintiff was "temporarily totally

27  disabled" as of the date of her elbow surgery and "permanent and stationary," but he added that if

28  Plaintiff were to seek employment, "she should avoid work activities that require heavy lifting in

United States District Court
Northern District of California

United States District Court
Northern District of California

1  excess of 25 pounds, forceful grasping with the right hand and repetitive data entry with the right

2  hand."  (*Id.* at 691, 693.)  These mirror the limitations the ALJ included in his residual functional

3  capacity assessment.  (*Id.* at 29.)  Specifically, ALJ concluded that Plaintiff "has the residual

4  functional capacity to perform light work[13] except she can perform no more than occasional

5  reaching (including overhead reaching) and handling with the dominant right upper extremity; and

6  she must avoid ladders, ropes, or scaffolds."  *(Id.)*  Thus, to the extent the ALJ incorporated the

7  limitations Drs. Anderson and Piasecki prescribed in conjunction with their determinations that

8  Plaintiff was "temporarily totally disabled" and "permanent and stationary," the court finds no legal

9  error.

10        Notwithstanding Plaintiff's various arguments, the ALJ provided specific and legitimate

11  reasons, supported by substantial evidence, for rejecting the opinions of Drs. Morgan and Zatarain-

12  Rios.[14]

13              2.      The ALJ properly rejected the opinion evidence on Plaintiff's depression.

14        In his decision, the ALJ noted that Plaintiff alleged disability on the basis of depression and

15  acknowledged that a number of physicians had diagnosed Plaintiff with that condition.  (AR at 23.)

16  _____

17  [13] According to the Code of Federal Regulations:  "Light work involves lifting no more than 20
   pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . .  If
   someone can do light work, we determine that he or she can also do sedentary work, unless there

18  are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of
   time."  20 C.F.R. § 404.1567(b).  This definition is not at odds with Dr. Piasecki's recommendation

19  that Plaintiff should avoid heavy lifting in excess of 25 pounds.

20

21  [14] In her opposition, the Commissioner asserts that the ALJ properly chose to discount the opinion of
   another one of Plaintiff's treating physicians, Dr. Schwartz.  Def.'s Mot. Summ. J. at 11.  In her reply,

22  Plaintiff argues, for the first time, that the ALJ should have provided specific and legitimate reasons
   for rejecting Dr. Schwartz's opinion.  Pl.'s Reply at 6, Dkt. No. 27.  In her opening brief, however,

23  Plaintiff described Dr. Schwartz's opinion but did not challenge the ALJ's treatment of that opinion.
   Pl.'s Mot. Summ. J. at 8, 9, 13, 14, 15, 16.  It thus seems unnecessary to address both the

24  Commissioner's argument and Plaintiff's responding argument on this issue.  *See Indep. Towers of
   Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e cannot manufacture arguments for an

25  appellant and therefore we will not consider any claims that were not actually argued in appellant's
   opening brief.") (citation and quotations omitted).  Indeed, it is only mid-way through her nine-page

26  reply that she first accuses the ALJ of having "failed to provide any reason as to whether he accepted
   or rejected the findings of . . . [Dr.] Schwartz."  Pl.'s Reply at 7.  Even then, however, she asks that the

27  court only credit the opinions of other physicians as true.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The ALJ also indicated that Plaintiff's records "contain no mental health treatment records, but rather only two one-time examinations by psychologists Dr. Morgenhaler and Dr. Larsen." *(Id.)* These examinations occurred in February 2011. *(Id.)* Dr. Morgenhaler diagnosed Plaintiff with a dysthymic disorder and possible somatoform disorder. *(Id.)* Dr. Larsen, the agreed psychiatric medical examiner in Plaintiff's workers' compensation case, also diagnosed Plaintiff with those disorders. *(Id.)* The ALJ determined that Plaintiff failed to prove that her depression is severe, that is, that it causes more than a minimal limitation on her ability to perform basic mental work activities. *(Id.)* He also concluded that even if Plaintiff's depression was acutely severe at times, she could not establish the durational requirement without any records of treatment. *(Id.)*

In making this determination, the ALJ considered the four broad functional areas set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 and section 12.00C of the Listing of Impairments, otherwise known as the "paragraph B" criteria. *(Id.)* The first functional area is activities of daily living. 20 C.F.R. Part 404, Subpart P, App'x 1. The ALJ noted that both Plaintiff and her husband reported that Plaintiff engages in a variety of daily activities. (AR at 23.) Plaintiff walks in the mornings, prepares meals, does laundry, administers medicine to her husband and daughter, shops for groceries, makes the bed, does dishes, cleans the house, and goes shopping. *(Id.)* The ALJ, therefore, concluded that Plaintiff has no limitation in this first functional area. *(Id.)*

The second functional area is social functioning. 20 C.F.R. Part 404, Subpart P, App'x 1. Here, the ALJ noted that Plaintiff regularly talks on the phone, watches movies with her family, goes on drives with her husband, and hosts pizza nights with her son's friends. *(Id.* at 24.) The ALJ also noted that while Plaintiff described herself as a "homebody" she also stated that she "has a lot of guests." *(Id.)* Moreover, the ALJ cited a February 2011 report from Dr. Morgan, in which he opined that Plaintiff had mild to no limitations in the area of social interaction. *(Id.)* In light of the foregoing, the ALJ concluded that Plaintiff has no limitation in this second functional area. *(Id.)*

The third functional area is concentration, persistence, or pace. 20 C.F.R. Part 404, Subpart P, App'x 1. As to this functional area, the ALJ relied on Dr. Morganhaler's opinion that Plaintiff had only mild limitations in understanding, memory, sustained concentration, and persistence. (AR

at 24.)  The ALJ thus determined that Plaintiff is only "mildly impaired in this third functional area."  *(Id.)*

The fourth functional area is decompensation.  20 C.F.R. Part 404, Subpart P, App'x 1. With respect to this functional area, the ALJ noted that Plaintiff's medical records did not contain any record of hospitalizations or emergency treatment for her mental impairment.  (AR at 24.)  On that basis, the ALJ concluded that Plaintiff has not experienced an "episode of decompensation of extended duration."  *(Id.)*

Plaintiff argues that the ALJ erred when he did not make any finding as to Dr. Larsen's[15] opinion regarding Plaintiff's mental impairment.  (Pl.'s Mot. Summ. J at 16.)   She also argues that the ALJ's determination that Plaintiff did not suffer from severe mental impairment is not supported by substantial evidence because multiple physicians, including Drs. Lucila,[16] Anderson, and Piaseckik, diagnosed Plaintiff with depression.  *(Id.)*  According to Plaintiff, Dr. Larsen opined that she suffered from "chronic depression, somatization, and her mental disorders combined with her medical conditions/medicals probably precluded [her] from *full time employment*."  (*Id.* (emphasis in original).)  She asserts that the ALJ should have provided specific and legitimate reasons for rejecting their opinions.  (Pl.'s Mot. Summ. J. at 16; Pl.'s Reply at 6.) [17]

These arguments fail.  As the Commissioner argues, Plaintiff's depression diagnosis, even if confirmed by multiple physicians, does not by itself establish that the impairment is severe.  (Def.'s

---

[15] Interestingly, Plaintiff does not challenge whether the ALJ afforded proper weight to Dr. Morganhaler's opinion, whose diagnosis of Plaintiff's mental condition resembled Dr. Larsen's and whose opinion the ALJ referenced in his opinion.

[16] Dr. Lucila is a state agency physician.  AR at 555.  The relevant portions of the record, however, reveal that Dr. Lucila simply completed a case analysis, in which she stated: "I feel [Plaintiff] is credible in her [complaints of] depression due to chronic pain and is more than non severe."  *Id.* Dr. Lucila, however, ultimately affirmed the SSA's initial denial of Plaintiff's claim.  *Id.*

[17] In her reply, Plaintiff advances a newly-raised argument that the ALJ has a duty to develop the record when psychological impairments are at issue.  Pl.'s Reply at 6, 7.  Because Plaintiff did not raise this argument in her opening brief, she has waived it.  *See Indep. Towers of Wash.*, 350 F.3d at 929.  In any event, the argument is severely undermined given her repeated opportunities to supplement the record during the administrative proceedings.  *See, e.g.,* AR at 86, 106, 107, 113.  As the ALJ advised, if Plaintiff was having issues obtaining records from Dr. Marty, a subpoena could have been issued.  *Id.* at 106.

United States District Court
Northern District of California

United States District Court
Northern District of California

Mot. Summ. J. at 13 (citing *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982).)  Here, the ALJ noted that Plaintiff had been diagnosed with dysthymic disorder and a somatization disorder.  (AR at 23.)  He also noted that various medical examiners indicated that Plaintiff suffered from depression.  *(Id.)*  The ALJ, however, determined that Plaintiff's depression was not severe.  (AR at 23.)  As this is a determination reserved for the ALJ, the court is not persuaded that the ALJ erred when he did not accept the conclusions of Drs. Larsen and Lucila, even if he failed to give specific and legitimate reasons for doing so.  *See* 20 C.F.R. § 404.1527(d); *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("An impairment is a purely medical condition.  A disability is an administrative determination of an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity.").  Moreover, as reflected in the ALJ's analysis of the paragraph B criteria, which incorporates aspects of Dr. Larsen's opinion, the ALJ's determination that Plaintiff's depression is not severe is supported by substantial evidence.  In any event, the ALJ determined that even if Plaintiff's depression was severe at times, she could not establish the applicable durational requirement.  (AR at 23.)  This determination goes unchallenged on appeal, and the court sees no reason to disturb it on this record.

   **B.**     **The ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms.**

        In evaluating a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step inquiry.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted).  An ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms." *Lingenfelder v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted).  At this step, a claimant need not show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted).

        If a claimant meets this first prong and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the

United States District Court
Northern District of California

severity of her symptoms.  *Id.*  Of course, an ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Nonetheless, when an ALJ finds a claimant's testimony unreliable, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted).   "[A]n ALJ may not reject a claimant's subjective complaints solely on a lack of medical evidence to fully corroborate the alleged severity of pain."  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted).

In assessing a claimant's credibility, the ALJ must consider, in addition to the objective medical evidence, the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures, other than treatment, the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR at 28.)  This satisfied the first prong of the ALJ's inquiry regarding the credibility of Plaintiff's complaints.  *See Lingenfelder*, 504 F.3d at 1035-36.  Next, the ALJ determined that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (AR at 28.)  As discussed below, the ALJ's reasons for this determination satisfy the second prong of the relevant inquiry.  *See Lingenfelder*, 504 F.3d at 1035-36.

In reaching this conclusion, the ALJ noted (1) that Plaintiff's "reported daily activities undermine her allegations of an inability to perform all work due to her condition" and (2) Plaintiffs

United States District Court
Northern District of California

complaints "are unsupported by the objective medical evidence in the record as reported by several treating and examining doctors." *(Id.)* As to the first reason, the ALJ referenced Plaintiff's daily activities, as reported to the SSA by Plaintiff and her husband. *(Id.)* In those reports, they state that Plaintiff performs household chores, cooks breakfast and "other meals," walks in the mornings up to a half-mile at a time, does laundry, goes shopping for groceries, does dishes, makes the bed, and cleans the house." *(Id.)*

To substantiate the second reason, the ALJ detailed various medical reports. *(Id.)* The ALJ noted that in March 2008, Plaintiff was admitted to the emergency department for chest pain. *(Id.)* He also noted that a chest x-ray and physical examination returned normal results and that the attending physician acknowledged Plaintiff's history of chronic pain syndrome and fibromyalgia and opined that Plaintiff had multiple somatic concerns. *(Id.)* In addition, the ALJ cited a June 2009 report from Dr. Morgan, in which Dr. Morgan noted that Plaintiff had multiple somatic complaints of unknown etiology. *(Id.)* The ALJ also referenced the opinion of qualified medical examiner Dr. Piasecki, who diagnosed Plaintiff with myofascial pain of the neck and right shoulder after examining Plaintiff three times and reviewing her medical records. (AR at 28-29.) The ALJ further relied on the findings of Dr. Anderson, a rheumatologist. In 2010, Dr. Anderson indicated that he was "struck by a persistent pattern of extensive interaction with health care providers with multiple somatic complaints and a paucity of objective physical findings" after his "exhaustive review of the entire medical record." *(Id.* at 29.) Dr. Anderson "opined that fibromyalgia by history was the most parsimonious diagnosis at this time, and that [Plaintiff's] pains are possibly 'somatic manifestations of depression and anxiety.'" *(Id.)*

The ALJ also noted that in April 2010, Dr. Piasecki reviewed a video surveillance tape. *(Id.)* The surveillance tape showed Plaintiff "handling grocery bags, unloading them and packing them into the back seat of her car and grasping and forcefully closing the door of a truck with her right upper extremity without difficulty."[18] *(Id.)* The ALJ treated Dr. Piasecki's report on the

---

[18] According to Dr. Piasecki's report, "[t]he average plastic grocery bag probably contain[ed] somewhere in the range of 10 to 15 pounds of groceries, which [Plaintiff] appeared to have been able to handle fairly easily with her right upper extremity . . . ." AR at 652.

surveillance tape as "credible evidence of [Plaintiff's] physical limitations since Dr. Piasecki . . . accepted the videotape as valid evidence." *(Id.)* The ALJ also referenced Dr. Piasecki's opinion that Plaintiff's activities, as captured on video, "are consistent with his recommendations that [Plaintiff] can work but should avoid activities that require heavy lifting in excess of 25 pounds, forceful grasping with the right hand and repetitive data entry with the right hand." *(Id.)*

Plaintiff, however, nonetheless argues that the ALJ erred when he discredited her testimony regarding the severity of her symptoms.[19] (Pl.'s Mot. Summ. J. at 19.) Plaintiff asserts that the ALJ's boilerplate language—that Plaintiff's testimony was not credible to the extent it was inconsistent with the residual functional capacity assessment—does not survive the clear and convincing standard. (Pl.'s Mot. Summ. J. at 19.) Plaintiff argues that the ALJ's first reason for rejecting her testimony, the lack of objective medical evidence, is insufficient because Dr. Morgan's records support that testimony. *(Id.)* Plaintiff also argues that the ALJ's first reason also ignores the elusive nature of fibromyalgia.[20] *(Id.)* Plaintiff further argues that the ALJ's determination that Plaintiff is able to perform light household chores without assistance is erroneous. *(Id.)*

Here, the ALJ did not cite to any evidence of malingering. *See Lingenfelder*, 504 F.3d at 1035-36. This required him to substantiate an adverse credibility determination with "specific, clear, and convincing reasons." *See id.* Contrary to Plaintiffs various arguments on this point, the ALJ's reasons satisfy this standard. The ALJ's based his credibility determination on more than the bare assertion that Plaintiff's testimony was not credible to the extent it was inconsistent with the residual functional capacity assessment. (*See* AR at 29.)

As discussed *supra* Part III.A.1, the ALJ relied on the opinions of Drs. Piasecki and Anderson and properly discounted the opinion of Dr. Morgan. Thus, while Plaintiff relies on Dr.

---

[19] In her moving papers, Plaintiff also asserts that state agency physician Dr. Lucila "found [Plaintiff] *fully credible*." Pl.'s Mot. Summ. J. at 19. (emphasis in original). Plaintiff does not expand upon this assertion. To the extent that Plaintiff relies on Dr. Lucila's credibility determination to challenge the ALJ's credibility determination, Plaintiff misses the mark. Credibility determinations are the province of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).

[20] In advancing this argument, Plaintiff relies on Social Security Ruling 12-2p. Pl.'s Mot. Summ. J. at 19. That ruling, however, did not take effect until July 25, 2012, after the administrative hearings in this case.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Morgan's records to adduce the medical evidence which the ALJ found lacking, Plaintiff's argument

2    fails.  In addition, while Plaintiff argues that the ALJ's reliance on the lack of objective medical

3    evidence ignores the elusive nature of fibromyalgia, that argument fails for the same reasons set

4    forth *supra* Part III.A.1.

5         Furthermore, the ALJ also relied on Plaintiff's own reports of her daily activities as well as

6    Plaintiff's husband's reports of those activities.  (AR at 29.)  The Ninth Circuit has held that

7    activities such as cooking, cleaning, driving, and caring for another may be sufficient to discredit a

8    claimant's allegations where the claimant performed these activities "with no significant assistance."

9    *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (rejecting the argument that ALJ the

10   improperly discounted testimony where claimant attended to her children's needs, went to the

11   grocery store, and left the house daily to go to her son's school, taekwondo lessons and soccer

12   games).  That holding is instructive here, as both Plaintiff and her husband reported that Plaintiff

13   completes a variety of household chores, though she needs a break to finish them or performs some

14   of them with difficulty due to pain from repetitive movements.  (AR at 221.)  Their reports show

15   that Plaintiff prepares "most" meals, which take her "[a]nywhere from 5 min – 2 hrs" to make.  (AR

16   at 224, 232.)  They also show that Plaintiff goes outside daily, and walks, drives, or rides in a car

17   when traveling, that Plaintiff can go out alone, and that Plaintiff does approximately 2 hours of

18   shopping once per week, though she "usually ha[s] help."  (AR at 225.)  Given this content in the

19   record, the ALJ appropriately discredited Plaintiff's pain and symptom testimony in light of the

20   reports about her daily activities.  *Cf. Benecke*, 379 F.3d at 594 (ALJ erred in his adverse credibility

21   determinations by relying in large part on the claimant's ability to drive and take one college class at

22   a time where the claimant could not drive further than five miles without experiencing severe pain

23   in her arms and could attend her college class only with special accommodations).

24        Plaintiff also challenges the ALJ's determination that she was able to perform light

25   household chores without assistance.  (Pl.'s Mot. Summ. J. at 20.)  This challenge is not well-taken.

26   The evidence concerning daily activities shows that Plaintiff is quite active at home, and while

27   Plaintiff cites to authorities cautioning against an overly restrictive use of the term "disability,"

28   those cases are inapposite.  First, Plaintiff cites *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)

United States District Court
Northern District of California

for the proposition that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." In that case, the ALJ determined that the claimant, a diagnosed alcoholic, was not disabled. *(Id.)* On appeal, the Ninth Circuit reversed the ALJ's decision because he failed to apply the legal standard for finding a disability based on the addictive effects of alcoholism. *Id.* at 560. In the decision, the Ninth Circuit noted that "evidence that [a claimant] can assist with some household chores [i]s not determinative of disability." *Id. Cooper*, however, has limited application here. First, Plaintiff does not merely assist with household chores, she performs them. Indeed, it appears she is the primary caretaker in her household. Second, the ALJ did not default to a finding of no disability upon determining that Plaintiff performs a range of household chores. Instead, he used that finding as a basis upon which to discredit her testimony as to her pain and symptoms. For these reasons, Plaintiff's reliance on *Cooper* is misplaced.

Second, Plaintiff relies on the Ninth Circuit's decision in *Fair v. Bowen*, where the Ninth Circuit noted that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." 885 F.2d at 603. In that case, the court affirmed the ALJ's determination that the claimant's "allegations of disabling pain, in addition to being unsupported by objective medical evidence, were inconsistent with the weight of the nonmedical evidence." *Id.* at 604. The ALJ had made the following finding, among others: "Although [claimant] asserted that he was 'confined primarily to resting and reclining about his own home,' he testified that 'he remains capable of caring for all his own personal needs, the performance of his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile." *Id.* at 604. Taking that finding, and the various others, into account, the Ninth Circuit characterized the ALJ's reasoning as follows: "[i]f [claimant's] pain is not severe enough to motivate him to seek treatment or follow his doctor's advice, and if [claimant] remains able to perform ordinary household and personal tasks, then he has not carried his burden of proving that his pain prevents him from returning to his former job." *Id.* The Ninth Circuit ultimately found the ALJ's reasoning sufficient, but warned that "such reasoning may not hold up in all cases[,]" as a claimant could have a good

United States District Court
Northern District of California

reason for not seeking treatment or a credible explanation "for their ability to work inside but not outside the home[.]"  *Id.*

Here, the ALJ described Plaintiff's daily activities, including the household chores she completes on a regular basis.  (AR at 24.)  In addition, the ALJ accepted the Dr. Piasecki's report of a surveillance tape as "credible evidence of the claimant's physical limitations . . . since Dr. Piasecki, the agreed medical examiner in the claimant's workers' compensation case, accepted the videotape[] as valid evidence."  (AR at 29.)  This video surveillance tape showed Plaintiff "handling grocery bags, unloading them and packing them into the back seat of her car and grasping and forcefully closing the door of a truck with her right upper extremity without difficulty."  *(Id.)*  After reviewing the tape, Dr. Piasecki opined that Plaintiffs activities "demonstrated on th[e] video are consistent with his recommendation that the claimant can work but should avoid work activities that require heavy lifting in excess of 25 pounds, force grasping with the right hand and repetitive data entry with the right hand."  *(Id.)*  The ALJ gave this opinion "some weight."  *(Id.)*  This accords with *Fair*, as the ALJ's reasoning reflects a determination that Plaintiff's daily activities, as recorded in Dr. Piasecki's report of the video surveillance tape, supports a determination that Plaintiff's limitations do not prevent her from working altogether.  885 F.2d at 604.  In her papers, Plaintiff has not pointed to anything in the record that may reconcile the apparent inconsistency between her alleged inability to work and her documented ability to complete various household chores.  *See id.*

Third, Plaintiff cites the Ninth Circuit's decision in *Magallanes v. Bowen* for the proposition that "evidence that a claimant can participate in basic human function[s] 'is not determinative of disability.'"  881 F.2d at 756.  In *Magallanes*, however, the Ninth Circuit ultimately rejected the claimant's argument that the ALJ improperly disregarded her subjective pain testimony.  *Id.*  Instead, it determined that the "record does not suggest that the ALJ relied solely on this testimony in flagrant disregard of overwhelming medical evidence to the contrary."  *Id.*  The same can be said of the instant case, as the ALJ has viewed Plaintiff's pain testimony in light of her level of activity, the opinions of Drs. Piasecki and Anderson, and the other evidence in the record as a whole.  Thus, to the extent Plaintiff relies on *Magallanes* to undermine the ALJ's treatment of Plaintiff's pain testimony, Plaintiff's reliance is misguided.

1    In light of the foregoing, the ALJ did not err in discrediting Plaintiff's pain testimony.

2                                     **IV.    Conclusion**

3           For the reasons set forth above, the court finds that the ALJ's decision is supported by

4    substantial evidence and is free of legal error.  Therefore, Plaintiff's motion for summary judgment is

5    DENIED, and the Commissioner's motion for summary judgment is GRANTED.

6           The Clerk shall close this case.

7           IT IS SO ORDERED.

8

9    DATE: March 4, 2014

10                                                   KANDIS A. WESTMORE
                                                     United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

23